**NATIONAL MARINE ENGINEERS' BENEFICIAL ASSOCIATION, AFL–CIO, et al., Plaintiffs,**

v.

**James BURNLEY, et al., Defendants.**

**Civ. A. No. 88–0485.**

United States District Court, District of Columbia.

April 18, 1988.

Stephen Zelinger, Vincent M. Garvey, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

REVERCOMB, District Judge.

This matter is before the Court upon plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss. Plaintiffs are five labor organizations which represent, *inter alia*, officers and seamen who work aboard commercial shipping vessels registered under the flag of the United States. As a general rule, all officers serving on U.S. flag vessels must be citizens of the United States. 46 U.S.C. sec. 8103(a). Unlicensed seamen on U.S. flag vessels must be either citizens or permanent residents of the United States. *Id.* sec. 8103(b). Plaintiffs brought this action for declaratory and injunctive relief, contending that defendants, the Secretary of Transportation and the Commandant of the Coast Guard, violated section 8103 in waiving the U.S. citizenship requirements for eleven Kuwaiti oil tankers which were registered under the United States flag in 1987 (the "reflagged tankers"). The object of the reflagging was to bring the tankers under the protection of the U.S. Navy as they passed through the Persian Gulf. The reflagged tankers were initially exempt from the citizenship requirements because, as the Coast Guard informed the Kuwait Oil Tanker Company, former 46 U.S.C. section 8103(b) permitted "the use of non U.S. citizen crewmembers while each vessel is engaged on a foreign voyage and does not call at a U.S. port." Kuwaiti Tankers: Hearings before the House Committee on Merchant Marine and Fisheries, 100th Cong., 1st Sess. 148 (1987) ("Kuwaiti Tanker Hearings").

In the Commercial Fishing Industry Vessel Anti–Reflagging Act of 1987, Pub.L. 100–239, 101 Stat. 1778 (1988) (the "Anti–Reflagging Act"), Congress amended 46 U.S.C. section 8103(b) to remove this this so-called foreign voyage exception to the manning requirements. On February 9, 1988, two days before the Anti–Reflagging Act was to take effect, Secretary of De-

Angelo V. Arcadipane, Dickstein, Shapiro & Morin, Washington, D.C., for plaintiffs.

Charles R. Both, Yablonski, Both & Edelman, Washington, D.C., for amici curiae.

fense Frank C. Carlucci requested, pursuant to the Act of December 27, 1950 (the "1950 Act"), Pub.L. 81–891, sec. 1, 64 Stat. 1120, 46 App.U.S.C. note prec. sec. 1, that the citizenship requirements be waived for the reflagged tankers. The 1950 Act requires the Coast Guard to waive compliance with "the navigation and vessel inspection laws ... upon the request of the Secretary of Defense to the extent deemed necessary in the interest of national defense by the Secretary of Defense." In accordance with the statute, Coast Guard Commandant Admiral P.A. Yost issued the requested waiver for a one-year period that same day.

Plaintiffs contend that defendants had no authority to waive the citizenship requirements because the language of the 1950 Act does not authorize such a waiver. Instead, plaintiffs assert, the exclusive means of waiving manning requirements are those described in 46 U.S.C. section 8103. Moreover, plaintiffs contend, any fair reading of the Anti–Reflagging Act and its legislative history proves that Congress intended to ensure that the reflagged tankers be manned by U.S. citizens. *Amici curiae,* thirteen members of the House of Representatives, join plaintiffs' arguments and note that when it took up the legislation that was to become the Anti–Reflagging Act, Congress considered and rejected the very same justification that the Secretary of Defense later relied on to request a waiver under the 1950 Act. *Amici* also argue that using American crews would better serve the national defense and would strengthen the U.S. Merchant Marine.[1]

The first sentence of the 1950 Act provides:

> The head of each department or agency responsible for the administration of the navigation and vessel-inspection laws is directed to waive compliance with such laws upon the request of the Secretary of Defense to the extent deemed necessary in the interest of national defense by the Secretary of Defense.

■ The issue is whether the phrase "navigation and vessel-inspection laws" encompasses vessel manning laws. In context, "navigation and vessel-inspection laws" is a broad, general description of laws administered by the Coast Guard that must be read expansively. The legislative history and prior administrative interpretation of the 1950 Act reveal that manning requirements are an integral part of the "navigation and vessel-inspection" laws. For example, section 2 of the Act of March 31, 1947, Pub.L. 80–27, 61 Stat. 33, conferred authority on the Commandant of the Coast Guard to waive compliance with the navigation and vessel inspection laws except as to "those sections of the navigation and vessel-inspection laws requiring the employment of American citizens as officers and crew members...." The Coast Guard's waiver authority was extended to authorize limited waivers of citizenship requirements in the Act of July 31, 1947, Pub.L. 80–293, 61 Stat. 685. Prior to its expiration, the waiver authority was extended by the Act of February 27, 1948, Pub.L. 80–243, 62 Stat. 38, and again by the Act of June 30, 1950, Pub.L. 81–591, 64 Stat. 309. Finally, in the 1950 Act, the waiver authority of the Commandant of the Coast Guard was made permanent and the authority to request waivers was conferred on the Secretary of Defense. The 1950 Act contains no language excluding citizenship requirements from the waiver authority. Consistent with the broad authority granted by the 1950 Act, the Coast Guard has waived citizenship requirements under the authority of the 1950 Act since at least 1966. *See* Declaration of Commander Joseph A. Steen and supporting exhibits, appended to defendants' Post–Hearing Brief.[2] Moreover, a question propounded to the

---

1. The merits of the decision to request a waiver are not before the Court. If the 1950 Act is read to confer authority on the Secretary of Defense to request a waiver of the manning requirements, his decision is not judicially reviewable because it is a matter committed entirely to his discretion by the plain language of the 1950 Act.

2. According to Commander Steen's declaration, records pertaining to waiver of the manning laws have been maintained only since 1966.

Coast Guard by the Committee on Merchant Marine and Fisheries—the same Committee which reported out the Anti–Reflagging Act—indicates that the Committee was apprised that the Coast Guard was regularly waiving compliance with the vessel manning laws:

> QUESTION. WHAT GIVES THE COAST GUARD THE RIGHT (OR DUTY) TO WAIVE VESSEL MANNING LAWS UNDER THE ACT OF DECEMBER 27, 1950?
>
> Answer. The Coast Guard considers the vessel manning laws an integral part of the navigation and vessel inspection laws. The Coast Guard is, therefore, directed by the Act of December 27, 1950, to waive compliance with these laws upon request of the Secretary of Defense to the extent deemed necessary in the interest of national defense. However, in this case, no waiver of manning laws was requested.

Kuwaiti Tankers Hearing at 251. The Court concludes that the phrase, "navigation and vessel-inspection laws" includes manning requirements.[3]

The Kuwaiti Tanker Hearings are strong evidence that Congress intended by amending 46 U.S.C. section 8103 to require the reflagged tankers to carry U.S. citizen seamen. *See, e.g.,* Kuwaiti Tanker Hearings at 2 (statement of Rep. Jones) ("What will be the effect . . . of the decision to use just one American citizen on the Kuwaiti tankers? . . . I am stunned by the apparent disregard for the reasons behind maritime manning standards"); *id.* at 20 (statement of Rep. Bateman) ("I hope the administration witnesses here today will get the message from myself and other members of the committee that at the very least, minimal American manning requirements should have been imposed [and] should still be imposed.") The House Report accompanying the Anti–Reflagging Act states that

the Act was aimed at avoiding circumvention of the manning requirements by the foreign voyage exception. *See* H.R.Rep. No. 423, 100th Cong., 1st Sess. 10, *reprinted in* 1988 U.S.Code Cong. & Admin.News 3245, 3251; *see also* Kuwaiti Tanker Hearings at 10 (statement of Rep. Biaggi) ("[T]he Coast Guard's liberal interpretation could have a disastrous effect on U.S. jobs if other operators take advantage of this loophole to evade U.S. manning laws").

■ These statements clearly evince an intent to eliminate the foreign voyage exception. None of the statements, however, nor the language of the Anti–Reflagging Act, conveys any intent to abrogate the authority of the Secretary of Defense to request a waiver when he deems it in the interest of national defense.

The postenactment statements by members of Congress cited in the pleadings reflect a policy disagreement with the executive branch. However, there is no indication or statement anywhere in the entire *legislative history* that the Congress intended to alter the Secretary of Defense's responsibility in this area.

■ Plaintiffs assert that, even assuming that the 1950 Act confers authority on the Secretary of Defense to request a waiver of manning requirements, such authority was implicitly repealed by the comprehensive nature of the manning provisions of 46 U.S.C. section 8103, as amended by the Anti–Reflagging Act. That section provides that the Secretary of Transportation may waive the manning requirements with respect to the offshore supply units, mobile off-shore oil drilling units and whenever U.S. citizens are unavailable, 46 U.S.C. sec. 8103(b)(3), and that the President may suspend the manning requirements during a proclaimed national emergency. *Id.* sec. 8103(h)(1). Plaintiffs contend that Congress intended these provisions to be the

---

**3.** Section 2 of the 1950 Act provides that "[t]he authority granted by this Act shall terminate at such time as the Congress by concurrent resolution or the President may designate." To the extent this provision violates the presentment clause of the Constitution, art. 1, sec. 7, cl. 1, it is severable from the remainder of the statute because there is no "evidence indicating that

Congress would not have enacted the statute had it known it could not include the unconstitutional provision." *City of New Haven v. United States,* 809 F.2d 900, 905 (D.C.Cir.1987); *See Alaska Airlines, Inc. v. Donovan,* 766 F.2d 1550, 1560, *aff'd,* —— U.S. ——, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987).

exclusive means by which the executive branch can waive the manning requirements. However, the mere fact that section 8103 confers waiver authority does not mean that such authority is exclusive. As defendants point out, the waiver authority conferred on the Secretary of Defense by the Act of 1950 and that conferred on the President by section 8103 have coexisted since 1950 without substantive change. *Compare* 46 U.S.C. sec. 8103(h) *with* the Merchant Marine Act of June 29, 1936, 49 Stat. 1993, ch. 858, sec. 302(h). The fact that the President has authority to suspend manning requirements in a proclaimed national emergency, does not displace, and is not inconsistent with, the authority of the Secretary of Defense to request a waiver to the extent he deems necessary in the interest of national defense. Repeals by implication are strongly disfavored. *Samuels v. District of Columbia*, 770 F.2d 184, 194 n. 7 (D.C.Cir.1985). The Court finds that the amendment of section 8103 by the Anti–Reflagging Act did not implicitly repeal the 1950 Act.

In sum, the Court concludes that the 1950 Act authorizes the Secretary of Defense to request a waiver of the citizenship requirements of 46 U.S.C. section 8103, and that this authority has not been implicitly repealed. Accordingly, the Court will deny plaintiffs' motion for a preliminary injunction and grant defendants' motion to dismiss.